**RIGGLE v. ROGAN, Collector of Internal Revenue.**

**No. 946.**

District Court, S. D. California, Central Division.

Feb. 21, 1941.

8

C. F. Culver, of Los Angeles, Cal., for plaintiff.

Wm. Fleet Palmer, U. S. Atty., E. H. Mitchell and Armond Monroe Jewell, Asst. U. S. Attys., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge (after stating the facts as above).

This cause was heard upon the issues raised by the complaint and the answer, and was submitted to the court for decision upon an agreed statement of facts and additional evidence. The court, having fully considered the matter, now finds in favor of the plaintiff and orders judgment in her favor in the sum of $10,585.32, with interest at the rate of six percent per annum from January 16, 1939.

Findings and judgment to be presented by the plaintiff under Local Rule 8.

As a guide to counsel in preparing the findings, the Court states briefly its grounds for decision:

The fundamental question relates to the nature of the "Agreement of Property Settlement", dated April 23, 1928, which later was modified by the agreement of November 3, 1932. While it is true that there are in the agreement words of relinquishment of certain rights or obligations arising out of the marital relation of the parties, the agreement is of the type commonly used in California in settling property rights of parties who are separated and contemplate divorce. At the time the agreement was entered into, Rose G. Riggle called herself a resident of Reno, Nevada. We know from the record that she acquired this residence for the purpose of securing a divorce and that a short time later on July 13, 1928, she actually did secure a divorce in Nevada.

■■ Under the law of California, the husband and wife may contract freely with each other with regard to community property and may change the character of either the separate or the community property. Civ.Code Cal., §§ 158, 159. Upon the granting of a divorce, the court must divide the community property. In certain instances, it may award to the wronged party more than half. Civ.Code Cal., § 146. If the main agreement be considered in the light of the oral testimony given, it is apparent that a divorce was contemplated. Whether it was requested by Riggle or Mrs. Riggle, matters not. If Mrs. Riggle was,—what counsel for the Government call her,—a "discarded wife", she evidently did not stay "discarded" very long. For we find that when the modification was entered into, she had remarried, although the husband remarried shortly after the divorce was secured. Because the chief asset of the community consisted of stock in a corporation, rather than divide such stock, it was decided to give to Mrs. Riggle half of its value upon his death, and support in the meantime. It is to be noted that, as is customary in such cases, the preamble sets forth fully the desire to adjust all property rights between the parties:

"Whereas, the parties hereto mutually desire that each of said parties shall be forever free and separate from the other as to their property and property rights, both present and prospective, and from all duties and liabilities of every kind and description growing out of their marriage relations and that all of their property

whether community or otherwise, now or hereafter owned by them, or either of them, or which they, or either of them, may hereafter acquire, or be entitled to in law and equity and whether or not mentioned or designated herein, shall be; become, and remain, separate and distinct, and any and all right or liability of each in the property of the other, or in that of the community, be forever waived, relinquished, and released by each of the parties hereto to the other as hereinafter more fully set forth."

This preamble is followed by an actual assignment and conveyance of Mrs. Riggle's interest in three pieces of real estate. Whether these were held in joint tenancy or in tenancy in common or as the separate property of either of the spouses, does not appear. Grant deeds conveying the property to Riggle were afterwards executed. Mrs. Riggle's interest in the stock was conveyed to him by the Agreement.

We need not go into a discussion of the nature of the wife's interest in the community property in California. I had occasion to treat the subject fully in Bank of America v. Rogan, D.C.Cal.1940, 33 F.Supp. 183. Nor are cases from other Circuits such as Meyers' Estate v. Commissioner, 2 Cir., 1940, 110 F.2d 367; Weiser v. Commissioner, 1939, 39 B.T.A. 1144; Empire Trust Co. v. Commissioner, 4 Cir., 1938, 94 F.2d 307, dealing with ante-nuptial agreements and contracts of surrender of marital rights unaffected by community property laws helpful. In California, the right of the wife in the community property has, at all times, way back to the Spanish law of Gananciales, been a valuable right. Upon divorce, the wife, at all times, and even before the change of 1927, became entitled as a matter of right to a definite portion of it. And certain it is that here we are confronted with an agreement wherein the spouses, desiring to divide their community property, in contemplation of divorce, in a manner in which the Court, under the law, would have had to divide it, decide, because of the nature of the property, to fix a value upon it and the husband makes a binding promise to pay to the wife money in lieu of the half which the Court would award to her. Later, following litigation upon the death of the husband, this promise is transmuted into a claim against the estate, approved by the state Probate Court, in an order which has attained finality and cannot

be challenged. Under these circumstances, we have a claim against an estate contracted in good faith and for an adequate money consideration, and not a mere relinquishment of marital rights under Section 303 of the Revenue Act of 1926, as amended by Sections 804 and 805 of the Act of 1932, 26 U.S.C.A. Internal Revenue Code, § 812.

Hence the ruling announced.