**ROGAN, Collector of Internal Revenue, v.**
**RIGGLE.**

**No. 9911.**

Circuit Court of Appeals, Ninth Circuit.

May 6, 1942.

Rehearing Denied June 6, 1942.

Samuel O. Clark, Jr., Asst. Atty. Gen., J. Louis Monarch, Louise Foster, and Carlton Fox, Sp. Assts. to the Atty. Gen., and Wm. Fleet Palmer, U. S. Atty., and E. H. Mitchell and Armond Monroe Jewell, Asst. U. S. Attys., all of Los Angeles, Cal., for appellant.

C. F. Culver, of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit judge.

This appeal involves estate taxes in the amount of $10,585.32, and is taken from the judgment of the District Court reported in 37 F.Supp. 7, in favor of the taxpayer.

The facts are not disputed. Elmer W. Riggle and Rose G. Riggle were married on May 4, 1905. They lived together as husband and wife in the State of California from the date of their marriage until the date of their separation shortly before April 1, 1928, at which date the wife acquired a residence in Nevada and obtained a divorce in that State on the 13th day of July following. The husband continued to reside in California.

On April 23, 1928, in contemplation of the divorce, the parties entered into an agreement each with the other as to their community property, which had been acquired prior to 1927, and which included 4,451 shares of stock of the Southern California Drilling Company valued in the property agreement in the sum of $222,650.

Under the terms of the agreement, the wife received certain real and personal property, and she assigned to the husband all of her right, title and interest in certain other real property and also in the 4,451 shares of Southern California Drilling Company stock. The husband agreed to pay to the wife the sum of $500 per month as long as he should live, and agreed that the wife should receive out of his estate, upon his death the sum of $100,000, with interest from the date of his death.

After the divorce was secured, Elmer W. Riggle married Theresa Riggle, who survived him and who was the executrix of his will and the taxpayer herein.

On November 3, 1932, the stock of the Southern Drilling Company had depreciated in value and Elmer W. Riggle and his former wife, then Rose G. Salling, executed a second contract, modifying the agreement above referred to so as to provide

for payments of $500 per month for Mrs. Salling for life in lieu of her presenting a claim for $100,000 against Mr. Riggle's estate upon his death.

Elmer W. Riggle died on October 30, 1935, and his former wife filed a claim against his estate for the sum of $100,000 and a contingent claim of $500 per month during her natural life. The claim was denied by the executrix of the will and Mrs. Salling commenced an action in the California court to recover from the estate claiming that the second agreement was without consideration on her part and that it was secured from her through fraud on the part of Mr. Riggle. The case was settled for $63,000 and the settlement was approved by the Probate Court.

On the estate tax return filed by the taxpayer as executrix, she claimed deductions totaling some $97,000, which included the $63,000 paid in satisfaction of the claim of Mrs. Salling. The Commissioner of Internal Revenue refused to allow this $63,000 deduction and determined a tax deficiency, which was paid under protest and was followed by a suit for refund of the amount so paid. It is the question of the right of the taxpayer to take this $63,000 deduction that is involved in this appeal. The District Court held for the plaintiff taxpayer, and this appeal is prosecuted by the Government.

Section 302 of Chapter 27 of the Revenue Act of 1926, 44 Stat. 9, 26 U.S.C.A. Int. Rev.Acts, page 227, reads in part: "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated * * *."

Section 303 of the same act, 26 U.S.C.A. Int.Rev.Acts, page 232, provides that for the purpose of the tax involved in this appeal the value of the net estate shall be determined by deducting from the value of the gross estate "Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth * * *."

In 1932 a new sentence was added to Section 303 above quoted, which read (Revenue Act of 1932, c. 209, § 804, 47 Stat. 169, 26 U.S.C.A. Int.Rev.Acts, page 240):

"For the purposes of this title, a relinquishment or promised relinquishment of dower, curtesy, or of a statutory estate created in lieu of dower or curtesy, or of other marital rights in the decedent's property or estate, shall not be considered to any extent a consideration 'in money or money's worth.'"

█ The taxpayer suggests that this amendment is inapplicable because it was not in effect at the time the contract with which we are concerned was executed, but of course she is wrong in this, for the law in effect at the time of the death (1935) is controlling.

Much of the Government's brief is devoted to the argument that since the property involved in the agreement was acquired by the parties prior to 1927, the wife had merely an expectancy therein, and that the release of this right was a release of her "marital rights in the decedent's property" and therefore not consideration in money or money's worth within the meaning of the statute.

The theory of the trial court's decision, is that under the California law the wife has at all times been entitled to a division of the community property upon divorce; and that an agreement in contemplation of divorce, dividing the property "in a manner in which the Court, under the law, would have had to divide it" is supported by a full and adequate consideration in money or money's worth, and is not a mere relinquishment of a marital right of the wife under Section 303 of the Revenue Act of 1926 as amended.

We find it unnecessary to decide whether or not such an agreement would meet the requirements of consideration "in money or money's worth" as limited by the statute, for, as we shall hereinafter point out, there is nothing in the record to support the conclusion that the agreement did divide the property "in the manner in which the Court, under the law, would have had to divide it", as was assumed by the trial court—or, in other words, whether or not the consideration was "full and adequate".

█ First, let us point out that at the time the first agreement was entered into, the wife was a resident of the State of Nevada, and it is apparent that the divorce in contemplation by the parties was to be a divorce secured in that State. Hence the California law which would award the plaintiff in a divorce granted on the ground

of extreme cruelty a greater portion than one-half of the community property becomes inapplicable. For the purpose of our discussion we shall assume that the wife would have been entitled to an equal division of the community property. The California law is that if neither the parties nor the court divide the community property, upon divorce the parties hold the property as tenants in common.

We therefore have a situation in which, assuming the theory of the trial court's decision is correct, the consideration for the promises of the husband contained in the agreement was the wife's relinquishment of her right upon the termination of the marital relation.

The question to be determined, then, is whether this consideration was "full and adequate", as required by the statute. Was the value of the wife's one-half interest in the community property worth at least as much as the husband promised to give her in exchange therefor?

In arguing the case before us, the taxpayer's attorneys have assumed that the $63,000 allowed as a claim against the estate was the full consideration moving from the husband, and have urged that the record shows that the wife's one-half interest in the community property was worth considerably more than that amount. They point to the fact that the Southern California Drilling Company stock was stated in the agreement to have had a value of some $222,000,[1] and argue from this that the wife's community interest must have been over $100,000. But, as we have already pointed out, under the agreement the wife received certain real and personal property in addition to the $100,000 promised by the husband. There is nothing in the record to show the value of these properties which she received, and they may have had a value far in excess of her interest in the community property. The agreement also shows that she transferred properties other than the stock to the husband but we do not know their value. There is nothing in the evidence to show or indicate that the purpose of the original agreement was to equally divide the community property between the spouses.

The taxpayer having failed to present any evidence whatever on the subject, there is nothing to support the conclusion of the trial judge that there was a "full and adequate" consideration for the husband's promise to pay the wife $100,000, or the $63,000 which was allowed as a claim against his estate.

Reversed.

[1] The Government urges that there is no evidence to support a finding as to the value of this stock, but for the purpose of this discussion we assume without deciding that this value was proved by the taxpayer.